UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALLIANCE FOR GOOD GOVERNMENT | CIVIL ACTION |
|---|---|
| VERSUS | No. 17-3679 |
| COALITION FOR BETTER GOVERNMENT | SECTION: "J"(2) |

## ORDER AND REASONS

Before the Court is a *Motion for Attorney Fees* **(Rec. Doc. 124)** filed by Plaintiff Alliance for Good Government ("Alliance"). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that Alliance's motion should be **GRANTED** as explained more fully herein.

## FACTS AND PROCEDURAL HISTORY

The facts underlying this dispute are set forth more fully in the Fifth Circuit's earlier opinion in this case. *See All. for Good Gov't v. Coal. for Better Gov't (Alliance I)*, 901 F.3d 498, 501-04 (5th Cir. 2018). The following is a summary of the procedural history as relevant to the instant motion.

The Court granted partial summary judgment in favor of Alliance on its federal trademark infringement claim,[1] and permanently enjoined Defendant Coalition for Better Government ("Coalition") from using both its trade name and its logo.[2] On appeal, the Fifth Circuit affirmed the grant of summary judgment but modified the injunction to restrain only Coalition's use of its logo. *Alliance I*, 901 F.3d at 502.

---
[1] (Rec. Doc. 43).
[2] (Rec. Doc. 55).

While that appeal was pending, Alliance moved for attorney's fees under the Lanham Act.[3] The Court found that the case was exceptional and awarded Alliance $68,237.25 in attorney's fees, the full amount it requested.[4] On appeal, the Fifth Circuit affirmed this Court's holding that Alliance is entitled to attorney's fees but vacated the fee award and remanded the case to this Court to reassess the amount in light of its earlier decision to modify the injunction. *All. for Good Gov't v. Coal. for Better Gov't (Alliance II)*, 919 F.3d 291, 297-98 (5th Cir. 2019).

During post-judgment discovery, Alliance learned that Coalition does not have a bank account, financial assets, insurance policies, accounts, or property.[5] As a result, Alliance moved to alter the Fee Judgment to hold Darleen Jacobs, lead counsel for Coalition, directly liable for fees because, Alliance contended, Ms. Jacobs was responsible for making this case exceptional by her own conduct.[6] Following remand from Coalition's second appeal, the Court joined Ms. Jacobs as a party so that she would have an opportunity to respond to Alliance's motion on her own behalf,[7] which she did.[8] Alliance's motion for attorney's fees is now before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

Under the Lanham act, in "exceptional cases," the prevailing party may be awarded "reasonable attorney fees." 15 U.S.C. § 1117(a). An exceptional case is one

---

[3] (Rec. Doc. 61).
[4] (Rec. Doc. 82).
[5] (Rec. Doc. 102-3, at 4-9).
[6] (Rec. Doc. 102).
[7] (Rec. Doc. 133).
[8] (Rec. Doc. 135).

that "'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Alliance II*, 919 F.3d at 295 (citation omitted). "When a party advances both Lanham Act and non-Lanham Act claims, a district court should make efforts to award fees only for successful Lanham Act claims." *Id.* at 297. "'[T]he impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment.'" *Id.* at 298 (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000)).

In determining the appropriate fee award, the "lodestar" calculation is the "most useful starting point." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar calculation consists of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The court may then adjust the lodestar either upward or downward, depending on the circumstances of the case. *Id.*

## **DISCUSSION**

The Fifth Circuit affirmed this Court's finding that this case was exceptional and therefore Alliance is entitled to attorney's fees but vacated the fee award because the amount was improperly calculated. *Alliance II*, 919 F.3d at 297-98. Alliance now seeks (1) to hold Darlene Jacobs personally liable for (2) $146,318.65 in attorney's fees, which includes its fees incurred on appeal.

## I.

Alliance seeks to impose personal liability for attorney's fees on Darlene Jacobs, president, director, and lead counsel for Coalition. Thus, the Court granted Alliance's request to join Jacobs as a party to these proceedings so that she would have an opportunity to respond to Alliance's motion and contest her personal liability.[9] *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471-72 (2000).

Alliance contends that imposing liability on Jacobs is necessary because she "runs Coalition as an empty shell with no bank account or assets of any kind" and has employed a "litigation strategy designed to bankrupt Alliance even if it prevailed."[10] In support of its position, Alliance relies on *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 843 (E.D. Tex. 2017), in which the district court found that liability under the Patent Act[11] could be assessed against non-parties where "(1) the actor is responsible for conduct that makes the case exceptional, (2) the actor is afforded due process, and (3) it is equitable to do so."

In *Nelson v. Adams USA, Inc.*, after the district court dismissed the plaintiff's patent infringement complaint, granted defendant's motion for attorney's fees, and set the amount of the fee award, the defendant moved to amend its pleadings to add the plaintiff's president and sole shareholder as a party from whom fees could be collected. 529 U.S. at 463-64. The defendant simultaneously sought to amend the

---

[9] (Rec. Doc. 133).
[10] (Rec. Doc. 124-1, at 15-16).
[11] The Fifth Circuit has recognized that cases interpreting the fee-shifting provision of the Patent Act are instructive in cases applying the fee-shifting provision of the Lanham Act. *See Baker v. DeShong*, 821 F.3d 620, 623 & n.1 (5th Cir. 2016).

4

attorney's fee judgment to impose liability on the shareholder, which the district court granted. *Id.* at 464. The Court of Appeals affirmed the amended judgment. *Id.*

The Supreme Court reversed, holding that the shareholder's right to due process had been violated because he "was never afforded a proper opportunity to respond to the claim against him." *Id.* at 468. The Court noted that the shareholder was never served with the amended pleading naming him as a party, nor was he afforded the time allowed to respond to an amended pleading by Rule 15. *Id.* at 466. The Court concluded that, even though there was "sufficient identity between" the shareholder and the plaintiff corporation, the shareholder's conduct was responsible for making the case exceptional, and the shareholder had actual notice that the defendant was seeking attorney's fees from the plaintiff corporation, the district court was required to afford the shareholder an "actual opportunity to defend" against the claims against him. *Id.* at 470-71. Significantly, the Court noted, "Our decision surely does not insulate [the shareholder] from liability. As counsel twice represented at oral argument, [the shareholder] seeks only the right to contest on the merits his personal liability for fees originally sought and awarded solely against [plaintiff corporation]. That right, we hold, is just what due process affords him." *Id.* at 472.

The *Iris Connex* court distinguished *Nelson* because it found the due process concerns raised in *Nelson* sufficiently addressed. 235 F. Supp. 3d at 843 n.5. Specifically, the *Iris Connex* court had *sua sponte* joined the non-party, allowed additional time for briefing, and held a live hearing in which the former non-party had an opportunity to testify before awarding attorney's fees and imposing personal

5

liability. *Id.* at 839-40. Notably, all of this had been done after the court granted summary judgment on the substantive claims. *Id.* at 832-33.

Here, the Court did not *sua sponte* join Jacobs but did so at the request of Alliance after Coalition, through Jacobs, had an opportunity to oppose the request. Thus, Jacobs's arguments based on *Nelson* are unavailing because, unlike the shareholder there, the Court has afforded her an "actual opportunity to defend" against the claim against her, an opportunity she has utilized by opposing the instant motion. *Nelson*, 529 U.S. at 470. Jacobs's argument that an amended pleading is required to add her as a party fails to recognize the Court's authority to add a party under Rule 21. *See* FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Jacobs also contends that the use of a "motion," as opposed to a "pleading," to join her as a party violates due process because it deprives her of several benefits under the Federal Rules of Civil Procedure that would allow her to prepare an appropriate defense, including the ability to raise defenses, discover evidence and witnesses, or have her liability determined by a jury. However, Jacobs does not indicate what defenses she hopes to raise or what evidence she hopes to discover, nor does she provide any authority that she is entitled to a jury in this context. *See AIA Am., Inc. v. Avid Radiopharmaceuticals*, 866 F.3d 1369, 1373 (Fed. Cir. 2017) (holding that claim for attorney's fees under the Patent Act did not invoke right to jury trial); *see also Baker*, 821 F.3d at 623 & n.1. Moreover, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful

manner,'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted), and Jacobs has been afforded such here.

Jacobs's arguments that the Lanham Act does not apply to her individually and that there has been no determination that she individually violated the Lanham Act are unavailing because a claim for attorney's fees in this context is "'collateral to and separate from the decision on the merits,'" *AIA Am., Inc.*, 866 F.3d at 1373 (quoting *Bundinich v. Benton Dickinson & Co.*, 486 U.S. 196, 200 (1988)), and the purpose of the fee-shifting provision is "to deter exceptional litigation," *Iris Connex*, 235 F. Supp. 3d at 854. Thus, the relevant question is not whether Jacobs personally infringed on Alliance's trademarks but whether her conduct made this litigation exceptional. This same rationale defeats Jacobs's argument that the First Amendment prevents the assessment of attorney's fees against her, because what is at issue is her *conduct* that made this litigation exceptional, not her speech in using Coalition's logo.

Notably, Jacobs does not argue that she is not personally responsible for making this litigation exceptional. This is unsurprising, because her conduct was the sole reason this litigation has been exceptional. The Court previously found that Coalition litigated this case in an unreasonable manner by (1) filing a motion for summary judgment raising only an unsupported laches defense; (2) filing a counterclaim without any actionable conduct; (3) filing a motion to dismiss two weeks before filing a motion for summary judgment, which rendered the former moot; and (4) behaving unreasonably during discovery by, e.g., refusing to postpone depositions

7

following the Court's grant of summary judgment to Alliance, thereby necessitating a protective order.[12] Jacobs is personally responsible for the motion for summary judgment, the counterclaim, and the motion to dismiss because she personally signed them, thus certifying that they were not presented for any improper purpose and were not frivolous.[13] *See* FED. R. CIV. P. 11(b). Jacobs was also personally responsible for the protective order because she was the one who insisted on proceeding with the depositions even after the Court granted summary judgment and Alliance informed the Court that it would not pursue its remaining claims.[14] Additionally, on remand from the second appeal, Jacobs attempted to file a brief on behalf of Coalition contesting Alliance's entitlement to fees, which this Court had already decided and the Fifth Circuit had affirmed.[15] Accordingly, the Court finds that Jacobs is responsible for making this litigation exceptional. *See Iris Connex*, 235 F. Supp. 3d at 843.

Second, the Court finds that the requirements of due process are met because Jacobs received notice and an opportunity to be heard: she was personally served with the Court's order adding her as a party and the motion for attorney's fees, as well as all responses to the motion,[16] and she was afforded an opportunity to defend against the claim, which she has.[17] *See Nelson*, 529 U.S. at 472; *Iris Connex*, 235 F. Supp. 3d at 843.

---

[12] (Rec. Doc. 86, at 6-7).
[13] (Rec. Doc. 19, at 2; Rec. Doc. 20, at 1; Rec. Doc. 26, at 1; *see also* Rec. Doc. 43 (denying motion to dismiss as moot)).
[14] (Rec. Doc. 44-1, at 2 n.3; Rec. Doc. 47, at 2).
[15] (Rec. Doc. 131).
[16] (Rec. Doc. 134-1).
[17] (Rec. Doc. 135).

8

Finally, the Court concludes that it is equitable to impose attorney's fees on Jacobs personally because, as the founder and president of Coalition, she is responsible for Coalition's inability to satisfy the fee award by operating it without dedicated funds or a bank account and paying for its expenses personally. *See Iris Connex*, 235 F. Supp. 3d at 843.

Jacobs did not need to litigate this case in an unreasonable manner. Her decisions to do so have led the Court to conclude that imposing attorney's fees on her personally is necessary to deter exceptional litigation, both from this litigant and as a warning to others. Accordingly, the Court holds that Jacobs is personally liable for Alliance's attorney's fees incurred in this litigation.

## II.

Having determined that both Coalition and Jacobs are liable for Alliance's attorney's fees, the issue remaining before the Court is the amount of the fee award. To resolve this issue, the Court must decide three sub-issues: (1) whether Alliance is entitled to recover its attorney's fees incurred on appeal; (2) whether the amount requested by Alliance is reasonable; and (3) whether Coalition is entitled to an offset as a result of the Fifth Circuit's modification of the injunction.

### A. Whether Alliance Is Entitled to Recover Fees Incurred on Appeal

Coalition contends that this Court is not the proper forum for Alliance's request for appellate attorney's fees. In arguing that it is entitled to recover its attorney's fees incurred on appeal, Alliance relies on *Kiva Kitchen & Bath, Inc. v. Capital Distributing, Inc.*, 681 F. Supp. 2d 807, 809-12 (S.D. Tex. 2010), where the district

court found that the prevailing plaintiff in a Lanham Act case was entitled to recover its appellate attorney's fees, relying on precedent from the First, Seventh, and Ninth Circuits. *See JCW Inv., Inc. v. Novelty, Inc.*, 509 F.3d 339, 341 (7th Cir. 2007); *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 294 F.3d 227, 230 (1st Cir. 2002);[18] *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir. 1996); *see also Dippin' Dots, Inc. v. Mosey*, 602 F. Supp. 2d 777, 785 (N.D. Tex. 2009) (awarding appellate attorney's fees on remand in Patent Act case).

Coalition provides no authority that prohibits a district court from awarding attorney's fees incurred on appeal; the cases relied on by Coalition are inapposite. In *Sims v. Great-West Life Assurance Co.*, the Fifth Circuit denied the motions for attorney's fees because they were untimely. 941 F.2d 368, 370 (5th Cir. 1991). *Sims* says nothing about the propriety of a district court awarding appellate attorney's fees. Additionally, *Exxon Corp. v. Burglin* only concerned attorney's fees under Federal Rule of Appellate Procedure 38, not the Lanham Act; the underlying action was brought under state law. 42 F.3d 948, 952 (5th Cir. 1995). Further, *Burglin* did not hold that a district court could not award appellate attorney's fees; it only held that such fees were not warranted under the facts of that case. *See id.* Accordingly, the Court concludes that Alliance may recover its appellate attorney's fees.

**B. Whether Alliance's Requested Fee Award Is Reasonable**

---

[18] The First Circuit in *Tamko* developed a three-part test for determining when appellate attorney's fees should be awarded under the Lanham Act. 294 F.3d at 230. Because Coalition has not argued for application of that test, the Court will not consider it.

In light of the Fifth Circuit's decision in *Alliance II*, Alliance now seeks to recover its attorney's fees for (1) obtaining summary judgment on its claim for infringement of its composite mark; (2) successfully defending that summary judgment on appeal; (3) litigating its entitlement to exceptional case fees; (4) successfully defending its entitlement to exceptional case fees on appeal; and (5) imposing liability on Ms. Jacobs directly. Alliance seeks a total of $146,318.65 in fees. Alliance contends that it has incurred $131,151.00 in fees as of the filing of its motion, excluding its motion to amend the fee judgment (the "Jacobs Fee Motion"), and proposes to reduce this amount by $1,500.00 for its claims that were voluntarily dismissed and then by an additional 10% to account for time relating solely to the claim for infringement of the word mark, in accordance with the Fifth Circuit's instructions in *Alliance II*, resulting in a fee award of $116,685.90. Alliance also seeks fees for bringing the instant motion, which were $7,818.75 as of the filing of the motion, and contends it is entitled to additional fees for its replies. Finally, Alliance contends that if the Court imposes personal liability on Jacobs then it is entitled to fees for the Jacobs Fee Motion, which amount to $21,814.00.

The Court previously determined that the rates charged by Alliance's attorneys were reasonable,[19] and Coalition does not challenge them here. Therefore, the Court finds that the rates of $225 per hour for Mr. Sahuc and $285 per hour for Mr. Latham are reasonable.[20]

---

[19] (Rec. Doc. 86, at 9).
[20] These rates represent an 18% discount of Mr. Sahuc's usual rate and a 26% discount of Mr. Latham's usual rate. (Rec. Doc. 124-2, at 5).

Alliance has submitted evidence showing that it spent 688.6 hours on this matter.[21] Because Mr. Sahuc performed over 85% of the work on this case, with the remainder performed either by Mr. Latham or a paralegal, the Court will use his rate to determine the lodestar, keeping in mind that deductions must be made for the claims Alliance voluntarily dismissed and its word mark claim on which it did not prevail. Under this method, the lodestar is $154,935.00, which is more than Alliance's requested amount.

Coalition raises several objections to the number of hours submitted by Alliance. First, Coalition objects to the fact that the time entries fail to distinguish between work done on the composite mark claim and the word mark claim, and also between the Lanham Act claim and the other claims that were voluntarily dismissed. However, Coalition fails to acknowledge Alliance's proposed reductions, which the Court agrees are reasonable.

Prior to the Fifth Circuit's opinion in *Alliance I*, the parties made little distinction between the word mark and composite mark claims. The allegations in Alliance's complaint did not differentiate between the marks with respect to the infringement claim.[22] Coalition's summary judgment motion was premised on a laches defense common to both claims.[23] Coalition's appellate brief in the merits appeal did not make any distinction between the word and composite marks except for a single footnote at the end of the brief.[24] Alliance spent only two paragraphs

---

[21] (Rec. Doc. 124-2, at 2; Rec. Doc. 124-3).
[22] (Rec. Doc. 1, at 5-6).
[23] (Rec. Doc. 26-1).
[24] (Rec. Doc. 124-4, at 22 n.45).

12

discussing the word mark separately in both its summary judgment motion[25] and its appellate brief.[26] In light of the intertwined nature of the claims, the Court finds Alliance's proposed 10% reduction to be reasonable. Additionally, the Court agrees that a reduction of $1,500.00 for the claims that Alliance voluntarily dismissed to be reasonable, as Coalition has not identified any other billing entries that should be reduced on this ground.

Second, Coalition objects that portions of several billing entries are redacted. Alliance contends that these redactions are subject to privilege and offers to provide the Court with an unredacted version for in-camera review. The Court notes that such a review would only increase the fees owed to Alliance by Coalition and finds such review unnecessary because Coalition has failed to support this argument with any legal authority.

Third, Coalition objects to several entries involving Mr. Fandal, chair of Alliance's board of directors,[27] because "Coalition is unaware of any reason for Mr. Fandal's involvement in this matter."[28] The Court finds this argument frivolous.

Fourth, Coalition objects to Alliance seeking fees for the time it spent litigating the fee issue, particularly Alliance's entitlement to fees for reply briefs. However, Alliance has provided authority showing its entitlement to such fees, *see Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing

---

[25] (Rec. Doc. 28-1, at 14-15).
[26] (Rec. Doc. 124-5, at 37-38).
[27] (*See* Rec. Doc. 102-8, at 1).
[28] (Rec. Doc. 125, at 14).

13

the entitlement to and amount of the fee is compensable." (citation omitted)), and Coalition presents no authority to the contrary.

Likewise, Coalition contends without authority that 21.25 hours for oral argument preparation in the merits appeal and 90.65 hours total for the fee appeal, including 29 hours for oral argument preparation, are unreasonable. The Court disagrees. *See Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *9-10 (N.D. Tex. July 17, 2014) (holding 80 hours of appellate briefing and 32 hours of oral argument preparation to be reasonable); *Shepard v. Dallas County*, 3:05-CV-1442-D, 2010 WL 2573346, at *3 (N.D. Tex. June 24, 2010) (holding 80 hours of appellate briefing and 24 hours of oral argument preparation to be reasonable); *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (holding 26 hours of oral argument preparation to be reasonable).

Finally, Coalition challenges the following billing entries: (1) 2.5 hours considering whether to participate in the Fifth Circuit mediation program; (2) 6.75 hours for a motion to consolidate appeals and continue oral argument, which the Fifth Circuit denied; and (3) 0.75 hours spent considering whether to file a surreply. Alliance asserts that these tasks amount to a total of $2,260.00 in fees. To the extent these entries are improper, the Court finds that they are adequately accounted for in the 10% reduction proposed by Alliance. *See SettlePou*, 2014 WL 3534991, at *2.

In light of the foregoing, the Court finds Alliance's requested fee amount of $146,318.65 to be reasonable. However, instead of allowing the parties to submit additional briefing on Alliance's outstanding fees, which would result in it incurring

even more fees, the Court will estimate the amount incurred by Alliance in filing its two reply briefs,[29] which is the only work unaccounted for in the fee award.

Alliance spent 3.75 hours on its reply brief for its motion for summary judgment,[30] 3.25 hours on its reply brief for its motion for final judgment,[31] approximately 2.0 hours on its reply brief for its original motion for attorney's fees,[32] 11.5 hours on its reply brief for its motion for appellate attorney's fees[33] and approximately 12 hours on its reply brief for the Jacobs Fee Motion.[34] Considering these amounts and the substance of the reply briefs, the Court concludes that 5 hours for Alliance's reply to Coalition's opposition and 2.5 hours for Alliance's reply to Jacobs's opposition is reasonable. *See SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 5924042, at *3 (N.D. Tex. Nov. 13, 2018) (finding 14.1 hours for a single reply brief addressing a new, complex issue to be reasonable). Using Mr. Sahuc's rate of $225 per hour, the Court finds that Alliance should be awarded $1,687.50 for this work.

Accordingly, Alliance's total award for attorney's fees is $148,006.15. The Court concludes this amount is reasonable and does not require further adjustment.

### C. Whether Coalition Is Entitled to an Offset

Coalition also contends that it is entitled to an offset of Alliance's fee award for its own attorney's fees based on it "prevailing" on both appeals and for opposing the

---

[29] (Rec. Docs. 129, 138).
[30] (Rec. Doc. 124-3, at 13).
[31] *Id.* at 16-17.
[32] *Id.* at 19.
[33] *Id.* at 32.
[34] *Id.* at 33.

instant motion. To be entitled to attorney's fees under the Lanham Act, Coalition must demonstrate that its "case 'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Alliance II*, 919 F.3d at 295 (citation omitted). Coalition has made no such showing. Accordingly, it is not entitled to an offset.[35]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Alliance's *Motion for Attorney's Fees* **(Rec. Doc. 124)** is **GRANTED**, and Alliance is awarded $148,006.15 in attorney's fees.

New Orleans, Louisiana, this 30th day of March, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[35] The Court also notes that Coalition previously requested these fees in a separate motion (Rec. Doc. 120), which the Court denied (Rec. Doc. 122).